# Kemmerer *versus* Tool and Romich, Assignees of Knerr.

1. It is not good practice to divide assignments of error into separate clauses and number them accordingly.

2. Kemmerer obtained a judgment against Knerr, who afterwards purchased land ; within two years the judgment was revived by amicable scire facias and confession ; within four months of the revival Knerr was adjudged a bankrupt. *Held,* that the revival was not in fraud of the bankrupt laws.

3. The revival was not out of the usual course of business ; it was not Kemmerer's duty to inquire as to Knerr's insolvency.

4. It would have been no infraction of the bankrupt law had Kemmerer, knowing Knerr's insolvency, issued execution on his original judgment and thus secured a lien by the levy on the after-acquired property of Knerr.

5. Knerr's confession of judgment of revival was not a preference voluntarily given by him, within the purview of the bankrupt law.

6. When the act of a debtor does not hasten the remedy or give a preference or any other advantage which the creditor could not at once have secured, it is not a fraud on the other creditors.

7. A mere passive non-resistance to a regular judicial proceeding will not show a preference to a creditor or a purpose to defeat or delay the Bankrupt Act, although the judgment creditor may know the insolvency of the debtor.

8. A debtor consenting to an amicable action or revival, which gives the creditor no advantage which he could not at once have secured by adversary process, does nothing beyond mere passive non-resistance.

March 23th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common .Pleas of *Lehigh county:* Of January Term 1876, No. 168.

This was an action of assumpsit, brought July 6th 1872, by James I. Tool and Charles W. Romich, assignees in bankruptcy of E. H. Knerr, against Martin Kemmerer.

[Kemmerer *v.* Tool.]

The action was to recover from the defendant the amount received by him from the proceeds of the sheriff's sale of Knerr's property, on a judgment alleged to have been obtained against Knerr in fraud of the bankrupt laws.

The case had been before tried and the judgment reversed; it is reported in 28 P. F. Smith 147.

The case was again tried September 13th 1875, before Longaker, P. J.

The plaintiffs gave in evidence the proceedings under which Knerr, June 22d 1870, was adjudged a bankrupt; also the record of a judgment against him in favor of Kemmerer, entered in the Common Pleas of Lehigh county, on the 3d of April 1868, to January Term 1868, for $4000; also, revival of the judgment to April Term 1870, by agreement of parties in an amicable scire facias, dated May 16th 1870, and filed May 17th.

Knerr testified that at the time the judgment was originally entered, he owned a tract of 23 acres of ore land; one-half of another tract of ore land containing 23 acres; one-half of the Lyon hotel property in Berks county; one-half of two houses in the 6th ward, Allentown, and of town lots in Allentown.

About the 5th of June 1868, the witness sold his interest in the ore lands, and on that day, the defendant released the lands from the lien of his judgment; about the 10th of April 1869, he sold his interest in houses in Allentown, and from the purchase-money paid $1350 to the defendant, who then released the houses from the lien of his judgment. Witness afterwards bought a farm called the "Marx farm;" at the time the judgment was revived, it was worth $9000; his personal property was then worth $3300.

The witness testified much at large as to his property, debts, &c.

On cross-examination defendant proposed to him a number of questions as to his insolvency, his knowledge of it at the time of the revival, and his intent to give the defendant a preference over his other creditors; all which were rejected by the court and bills of exception sealed.

The defendant, called by the plaintiffs as on cross-examination, testified, that he took the revival when his judgment was two years old, because he had released the other properties, to cover all the real estate, to obtain a lien on the Marx farm. He testified, also, that he knew that Knerr was indebted in large amounts. At the time of the revival he did not know that Knerr was insolvent or contemplated insolvency; he knew, at the time of the revival, that he could have issued an execution and created a lien on Knerr's real and personal estate. He had issued a fieri facias and sold Knerr's interest in an ore lease.

There was evidence also by the plaintiffs, for the purpose of showing that the defendant knew that Knerr was insolvent; they gave

[Kemmerer v. Tool.]

evidence also that there was a large amount of record debts and other debts against Knerr at the time of the revival.

The "Marx farm" was sold by the sheriff for $6300. On the 8th of November 1870, the sheriff paid the defendant, Kemmerer, from the proceeds of sale, $2583.27, "in full of debt, interest and costs" on his revived judgment.

This is the sum for which the plaintiffs brought this suit.

The following are the defendant's points and their answers :—

1. The Bankrupt Act is not to be construed to cover all cases of insolvency to the exclusion of other judicial proceedings. A debtor can confess a judgment and allow his property to be seized on execution; this is not *per se* an act of bankruptcy.

3. A creditor holding a judgment may issue an execution and levy on the property of the debtor, even though he doubts his solvency at the time of making the levy, and the lien thus created will be protected.

4. The defendant, Kemmerer, could have issued execution on his original judgment, at the time, or before the revival, seized Knerr's property, and levied on the Marx farm, without committing a fraud on the Bankrupt Act.

To each of these points the judge answered :—

"This is a good legal proposition, but it has no application to the issue trying."

5. Kemmerer having taken a revival of the judgment, thereby giving time to Knerr, is evidence to rebut the presumption of fraud upon the Bankrupt Act.

Answer. "This is a circumstance which may be considered by you, if you deem it of any weight, in determining this question. It is not affirmed as broadly as prayed for."

6. (Kemmerer might at once have sued out an execution, made a levy on the after-acquired real estate of Knerr, and thus secured the lien which he was desirous of obtaining.) The mere circumstance that Knerr consented to do a thing, which in any aspect was for his (Knerr's) benefit, should not be allowed to affect the creditor with knowledge of insolvency.

Answer. "The first part, as a proposition, may be good law, but it has no application to the case trying. The remainder is a circumstance for the jury to give to it such weight, if any, it may be entitled to."

8. Kemmerer in accepting the revival obtained no higher security than he might have obtained by issuing execution, and, therefore, it is no fraud on the Bankrupt Act.

Answer: "This point as a whole is answered in the negative."

The court further charged :—

* * * "This action is based upon the allegation that the defendant obtained a preference upon certain real estate of Mr. Knerr, contrary to the provisions of the Bankrupt Act, and such

[Kemmerer *v.* Tool.]

conduct, if it exist, will be a fraud upon that act.   The acts contrary to the provisions of the bankrupt law, as alleged in this case, are not in themselves fraudulent in fact; nor are they criminal; nor tainted with turpitude; but, being prohibited by the Act of Congress, they are illegal, and being the means or device used to secure the payment of the money in dispute, render the defendant liable in this action; and if there should be a recovery by the assignees, then this money will be assets of the bankrupt's estate for pro rata distribution amongst his creditors. * * * You are trying the sole question of fraud or no fraud upon the Bankrupt Act.

"The Bankrupt Act is a means intended to effect an equitable distribution of an insolvent's estate amongst his creditors.   Yet while this is the specific purpose of the act, one creditor may by adverse legal process obtain a lien to the exclusion of other creditors, and thereby secure the payment of his claim; provided, no act be done which is prohibited by the provisions of the Bankrupt Act. * * *

"While this may be legally done, yet every device, contract, contrivance, or agreement between a creditor and his debtor, entered into with an intent to defeat the provisions of the Bankrupt Act, and being collusively done, is void; and whatever property or valuable thing is so obtained, may be covered in an action by the assignees of the bankrupt, and when so recovered is held as assets for the benefit of all the creditors who may legally prove their claims."

The judge then recapitulated the facts.

"Approaching then the consideration of this important point, you will inquire, did Knerr, the debtor, and Kemmerer, the creditor, do any act which is contrary to the provisions of the Bankrupt Act, by agreeing to a revival of this judgment?   If they did, then this action will be maintained; if they did not, then the action will fail.

"To commit a fraud upon the Bankrupt Act these several ingredients must concur: 1st. Knerr must have been insolvent, or contemplating insolvency; 2d. The revival of the judgment must have been given with a view to prefer, or must have in effect preferred the defendant over the other creditors; 3d. The defendant, at the time, must have known, or must have had reasonable cause to believe that Knerr was insolvent, or was contemplating insolvency, and that the revival of the judgment was given in fraud of the provisions of the Bankrupt Act; 4th. The revival must have occurred within four months of the filing of the petition upon which Knerr has been declared a bankrupt.

"1. Knerr must have been insolvent, or was contemplating insolvency.   Insolvency under the Bankrupt Act is not a total inability of Knerr to pay his liabilities for want of assets, but it

[Kemmerer v. Tool.]

is that condition financially, when he is unable to pay his notes, and other liabilities generally, as they fall due. A failure to meet a note or two, or other indebtedness when due or demanded, is not enough, if payment be made within a reasonable time thereafter; but if there be a general failure to pay, then the condition of the law is satisfied and insolvency has occurred, or the debtor may be said to be acting in contemplation of insolvency. * * * Insolvency is a question of fact, and is not founded upon the actual knowledge of the debtor or creditor; a reasonable cause to induce the belief is all that is required, as regards the creditor.

" Was then Knerr, May 17th 1870, insolvent, or acting in contemplation of insolvency? Was he at that time able to pay his debts, or had he a reasonable expectation that he would be able to do so? Or had he the ability to pay his notes, or other debts, as they became due, or within a reasonable time after they became due and were demanded? * * * [If at the time of the revival of the judgment you find the fact that Knerr was entirely unable to pay his debts, then the law declares him to be insolvent, and a bankrupt in fact. If he were unable to pay his notes as they matured, or to pay generally his debts due as they should be demanded, then, under the provisions of the Bankrupt Act, he will be declared to be a bankrupt; even though he might have assets sufficient to pay all his debts.] * * *

" You will then direct your inquiry to the time of the taking of the revival, and determine whether or not, at that time, Knerr was able to pay his debts. Was he insolvent or contemplating insolvency? If you find that Knerr was insolvent, or contemplating insolvency, you will have established the first requisite to support this action. * * *

" Assuming you have found the first.requisite—insolvency, or contemplating insolvency—you will proceed to inquire as to the second requisite, that is, was the revival given with a view to prefer, or did it in effect prefer the defendant's claim over the other creditors? [I instruct you that the effect of the revival was to give 'the defendant a preference over the other creditors, and as the law presumes that every man intends the consequences of his act, it follows as a legal conclusion that the revival was given with a view to prefer, and did in fact prefer the defendant over the other creditors.]

'" Assuming that the first requisite has been established—the insolvency, or the contemplation of insolvency by the defendant, and the second following as a conclusion of law, you will proceed to inquire for the third requisite, to wit :—

" Did the defendant know, or had he reasonable cause to believe that Knerr was insolvent, or contemplating insolvency? And was the revival given with an intent to defeat the provisions of the Bankrupt Act? This requisite may be considered under three

[*Kemmerer v.* Tool.]

heads : actual knowledge, reasonable cause to believe and the intent to defeat the law. As bearing upon actual knowledge, actual notice is to be regarded as actual knowledge ; and notice is either actual or constructive. Under the Bankrupt Act, notice may be either real knowledge, or such a chain of facts and circumstances as will produce a reasonable cause of belief. Reasonable cause of belief is a condition of mind falling short of actual knowledge ; it is a reasonable and well-grounded suspicion naturally flowing from facts proven, and may flow from facts not sufficient to produce a full conviction. In the ordinary transactions of life, a chain of facts and circumstances often exist upon a subject about which inquiry is being made, which will not produce a full conviction of the existence of such facts, yet it will produce a reasonable and well-founded belief in the existence of such facts, and this is all that is required here.

" [Again, there is a legal principle called constructive notice. Constructive notice is distinguishable from actual notice, or knowledge in this, as regards the Bankrupt Act. Whatever facts, course of conduct, or circumstances, fairly put a careful and prudent man upon inquiry, where the means of knowledge are at hand, will constitute constructive notice, and when these things concur, and a party fails to make a proper or reasonable inquiry as regards the truth or falsity thereof, he does so at his peril, and he becomes chargeable with all the facts which by a proper inquiry he might or ought to have ascertained.]

" Under this instruction, as to legal principles, you will recur to a consideration of the facts, and determine whether or not the defendant by rumor, report, or the reputation of the neighborhood, had information of such facts and circumstances as would put a prudent and ordinarily careful person upon inquiry."

The judge then referred to evidence of conversations of the defendant with other persons, and proceeded :—

"If you find as a fact, that the defendant used any or all of these expressions, you will weigh them with all the other testimony in the cause, as well as with the acts and conduct of the defendant, and with his testimony, and determine whether the defendant knew, or had reasonable cause to believe, or had in his possession such facts as would put a careful and prudent man upon inquiry ; and if you shall find any one of these three conditions, then you will have found, as a part of the third requisite, that the defendant knew, or had reasonable cause of belief, that Knerr was insolvent, or contemplating insolvency. * * *

" [The other part of the third requisite is, was the revival given with an intent to defeat the provisions of the Bankrupt Act ? If Knerr was insolvent, or acting in contemplation of insolvency, and the defendant knew it, or had reasonable cause to believe it, the fact that the legal consequence of the revival was to give a prefer-

[Kemmerer *v.* Tool.]

ence, a legal presumption arises that the act of revival must be construed as an intent to defeat the provisions of the Bankrupt Act; because every person is held to intend the logical sequence of that which necessarily flows from the acts or act done by him. But while this is a presumption, and only primâ facie proof, it may be overcome if there is found any testimony in the cause strong enough to overcome it, and this is a fact which you must determine.] " * * *

The verdict was for the plaintiffs for $3389.25.

The defendant took a writ of error.   He assigned for error :—

1. The answer to his first point.

2–7. The answers to his third and subsequent points.

As to the charge of the court.

This assignment was to the parts of the charge in brackets which were separately numbered.

As to the admissions and rejections of evidence.

This assignment also was divided into clauses referring to each particulur ruling and consecutively numbered.

*E. J. Erdman* and *J. D. Stiles*, for plaintiff in error.—A change of securities, putting the creditor in no better position, is no fraud upon the Bankrupt Act : Clark *v.* Iselin, 21 Wall. 360 ; Cook *v.* Tullis, 18 Id. 332 ; Tiffany *v.* Saving Bank, Id. 375.   The policy of the Bankrupt Act, as it now seems to be administered, is to sustain the efforts of the struggling debtor to continue his business : Wilson *v.* Bank, 17 Wall. 488.   Wherever circumstances and facts are given in evidence, then the question of intention is for the jury, and not a question of law for the court : Clarion Bank *v.* Jones, 21 Wall. 325 ; Little *v.* Alexander, Id. 500.

*E. Albright* and *R. E. Wright*, for defendants in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 8th 1876.

The material facts of this case are not in dispute.   They are minutely stated by the learned judge below in his charge to the jury.   Upon these facts we think there was error in the answers to the second, third, fourth, fifth and seventh points of the defendant, and also in the charge as set out in the first assignment of error.   It is not a proper practice to divide the assignments of error into separate clauses, and number them accordingly.

When this case was here on the former writ of error we held that the court below had erred in instructing the jury that the amicable revival of Kemmerer's judgment was an act out of the usual course of business, and that it was Kemmerer's duty to make inquiry as to the insolvency of Knerr, and on failure so to make inquiry, the presumption followed that he would have found reasonable cause to induce the belief that Knerr was insolvent, or was

contemplating insolvency. (For this opinion see 28 P. F. Smith 147.) The principle then settled was conclusive against the plaintiff below, although the case was not so presented as to call for the expression of such an opinion; the second assignment of error, then actually including five distinct points, according to the twenty-second rule of the court, was a waiver of the errors alleged.

Kemmerer could have issued an execution on his original judgment, and immediately secured a lien by a levy on the after-acquired property of Knerr. Though he knew of Knerr's insolvency, there would have been no infraction of the Bankrupt Act in doing this. This being so, Knerr's confession of a judgment of revival did not alter the case. It was not a preference voluntarily given by the debtor within the purview of the law. The creditor was put in no better condition, and the debtor had more time given to him, and was saved the costs of adverse process. It was an act in the ordinary course of judicial proceedings. Perhaps nine-tenths of all judgments are revived by agreement. When the act of the debtor does not hasten the remedy, or give precedence to one over other creditors pressing their claims, or any other advantage which the creditor could not at once have secured, it is not easy to understand how it can be regarded as a fraud on other creditors. According to the judgment of the Supreme Court of the United States, in Wilson *v.* The City Bank, 17 Wallace 473, something more than passive non-resistance of an insolvent debtor to regular judicial proceedings is necessary to show a preference of a creditor, or a purpose to defeat or delay the operation of the Bankrupt Act, and that though the judgment creditor in such case may know the insolvent condition of the debtor. We hold that the debtor, by consenting to an amicable action or revival, which gives the creditor no advantage which he could not at once have secured by adversary process, does nothing in effect beyond "mere passive non-resistance." He agrees only to what he cannot help. The contrary doctrine would be of no practical benefit except to prothonotaries and sheriffs. No man would rest upon an amicable revival, if it was liable to be declared invalid in case the defendant became bankrupt within four months. The case below, we think, falls directly within the principle of Wilson *v.* City Bank, and upon the undisputed facts the defendant below was entitled to a verdict in his favor.    Judgment reversed.